**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| ROBERTO OROZCO-RAMIREZ, | **CV-26-252-GF-BMM** |
| Plaintiff, | |
| v. | |
| Joe VISSER, Facility Warden at Cascade County Detention Center, Great Falls, Montana; et al., | **ORDER** |
| Defendants. | |

Petitioner Roberto Orozco-Ramirez fled violence in Mexico as a child and entered the United States without inspection over two decades ago. (Doc. 1 at 2.) Orozco is the father to four U.S. citizen children between the ages of eight and nineteen. (*Id.*) Orozco is "a business owner, the primary breadwinner for his family, and a beloved member of his community." (*Id.* at 7; *see also* Doc. 15 (collecting a significant number of letters in support from the community).) Orozco "single-handedly built a successful diesel repair business in Froid, Montana."

1

(Doc. 1 at 8.) Orozco "volunteers his time with the community, maintains the local school district buses, helps neighbors in need, and is a baseball coach." (*Id*.)

Orozco has lived in the United States for twenty-five years. (*Id*. at 7.) No indications exist that Orozco has had any documented encounters with law enforcement during his time in the United States. (*Id*. at 9.) Orozco's sole documented interaction with immigration enforcement officers before this incident occurred in 2009 when he was detained by the Department of Homeland Security ("DHS") through a generic sweep called Operation Community Shield. (*Id*. at 8.) ICE removed Orozco from the United States, and Orozco returned undetected shortly after. (*Id*. at 9.) No indication exists that Orozco has had any interactions with immigration enforcement officers from 2009 until now. (*Id*. at 9.)

The Government filed a criminal complaint against Orozco on January 21, 2026, charging him with illegal reentry pursuant to 8 U.S.C. § 1326. *See United States v. Orozco-Ramirez*, 4:26-cr-00011-BMM (D. Mont.). Orozco voluntarily turned himself into law enforcement upon learning of the complaint on January 25, 2026. (Doc. 1 at 9-10.) The U.S. Border Patrol took Orozco into custody on January 25, 2026. (*Id*.) The Court received several filings in the case, including a motion to dismiss filed by Orozco. *See Orozco-Ramirez*, 4:26-cr-00011-BMM (D. Mont.). The Court eventually granted the Government's motion to voluntarily dismiss the criminal complaint against Orozco on April 14, 2026. *Id*.; *see also* Doc.

1 at 10. DHS took Orozco into custody after the Court dismissed the criminal complaint. (Doc. 1 at 10.) Orozco has not received a custody redetermination hearing before an Immigration Judge ("IJ") since DHS took custody of him following the dismissal of the criminal charges. (*Id*. at 10-11.) The Government argues that Orozco is not entitled to a custody redetermination hearing before an IJ as the Government has determined that Orozco is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (*See* Doc. 19.)

Orozco has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 alleging that he is in custody, originally at the Cascade County Detention Center, in violation of the Constitution or laws of the United States. (Doc. 1.) The Court ordered the Government to respond to Orozco's petition. (Doc. 7.) The Court entered an expedited scheduling order to address Orozco's petition. (*Id*.; *see also* Doc. 14.) The Government opposes Orozco's petition. (Doc. 19.) The Court held a hearing on the matter on May 12, 2026. (Doc. 28.)

## LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

**DISCUSSION**

This case concerns the scope of the Government's authority to detain a noncitizen pending their removal proceedings without the opportunity for release on bond under 8 U.S.C. § 1225(b)(2)(A). The Government recently has asserted that all noncitizens who entered the United States without inspection and are later apprehended inside the country must be detained without a bond hearing during their removal proceedings, regardless of how long they have resided in the United States or whether they have a criminal history. The Government specifically has taken the position that such noncitizens remain "applicants for admission" and "seeking admission," and thus, remain subject to mandatory detention throughout their removal proceedings under § 1225(b)(2)(A) rather than discretionary detention under 8 U.S.C. § 1226(a). The Board of Immigration Appeals ("BIA") adopted this new interpretation of the statute in a precedential decision issued on September 5, 2025. *See Matter of Hurtado*, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Courts in many other districts already have addressed a litany of these cases with nearly identical challenges and arguments. This case represents the first of its kind to arise in the District of Montana. The Court will address each issue in turn.

I.    **Subject Matter Jurisdiction**

The Government first argues that the Court lacks subject matter jurisdiction over this case. (Doc. 19 at 10.) The Government specifically asserts that the Court

4

lacks subject matter jurisdiction as 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) bar Orozco's claims and requested relief. (*Id*.) The Court first will address § 1252(g).

Section 1252(g) provides in relevant part: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Government asserts that § 1252(g)'s bar extends to decisions over "the method by which the Government chooses to commence removal proceedings, including the decision to detain an alien pending removal." (*Id*., at 10-11, citing *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007) and other cases.) The Government argues that Orozco's challenge "arise[s] from his detention during removal proceedings, which stem from the Attorney General's decision to commence such proceedings." (Doc. 19 at 11.) The Government appears to concede, however, that Orozco's challenge to his detention without a hearing does not directly challenge the Government's ability to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).

"[B]oth the Supreme Court and the Ninth Circuit have consistently recognized that § 1252(g)'s 'narrow' scope does not sweep in non-discretionary, purely legal questions," such as whether § 1225(b)(2) or § 1226(a) governs a

5

noncitizen's detention. *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1312 (W.D. Wash. 2025) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*") (providing a "narrow reading" of § 1252(g)'s jurisdictional bar)). The Ninth Circuit further recognized in *Ibarra-Perez v. United States*, that "[f]rom the beginning, we have been clear that § 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." 154 F.4th 989, 997 (9th Cir. 2025). Courts in this circuit also have emphasized that § 1252(g) does not bar due process claims. *Ibarra-Perez*, 154 F.4th at 997 (citing *Walters v. Reno*, 145 F.3d 1032, 1032, 1052-53 (9th Cir. 1998); *see also Guzman-Jarquin v. Divver*, No. 26-CV-514-BJC-JLB, 2026 WL 571615, at *1 (S.D. Cal. Feb. 27, 2026) (citing *Walters v. Reno*, 145 F.3d at 1032 ("[The plaintiffs'] objective was not to obtain judicial review of the merits of their . . . proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings.")).

Orozco does not challenge the Government's decision to execute a removal order. Such challenge to the execution of a removal order more likely could bar the Court's review. Orozco instead challenges the legality of his detention based on alleged violations of statutory, regulatory, and constitutional duties. Such claims fall squarely within the Court's habeas authority. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping

power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders."); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (interpreting 1252(g) to allow jurisdiction over detention challenges); *see also Wheeler v. U.S. Immigr. & Customs Enf't*, No. CV-25-103-GF-BMM, 2026 WL 74161, at *3 (D. Mont. Jan. 9, 2026) ("Section 1252(g) does not shield challenges to detention orders from judicial review."). The Government offers no binding authority or persuasive arguments otherwise.

The Government further argues that § 1252(b)(9) strips the Court of subject matter jurisdiction. (Doc. 19 at 12.) Section 1252(b)(9) bars "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter [including § 1225 and § 1226]." The U.S. Supreme Court has referred to § 1252(b)(9) as an "unmistakable zipper clause." *AADC*, 525 U.S. at 483. "This statutory scheme was designed to limit" all noncitizens "to one bite of the apple with regard to challenging an order of removal." *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (citation modified).

"[Section] 1252(b)(9) does not bar claims that are 'independent of or collateral to the removal process.'" *Ibarra-Perez,* 154 F.4th at 1000 (quoting

*J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016)). The U.S. Supreme Court has made clear that challenges to the interpretation of the INA's detention provisions stand collateral to the removal process. The U.S. Supreme Court directly has considered and rejected the argument that § 1252(b)(9) bars review of legal questions concerning the detention provisions of § 1225 and § 1226 in *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). The petitioners in *Jennings* brought a class action challenging the legality of indefinite detention without a bond hearing under § 1225 and § 1226. *See* 583 U.S. at 291-92.

The U.S. Supreme Court considered the same arguments that the Government now makes concerning § 1252(b)(9)'s bar over any decisions arising from Orozco's removal proceedings. *Id*. at 292-93. The U.S. Supreme Court directly rejected the argument and reasoned that the "[petitioners] [were] not asking for review of an order of removal; they [were] not challenging the decision to detain them in the first place or to seek removal; and they [were] not even challenging any part of the process by which their removability [would have been] determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar." *Id.* at 294-95. *Jennings* characterized the Government's position as an "extreme" and "expansive interpretation of § 1252(b)(9)" that "would lead to staggering results." *Id*. at 293.

The Government fails to directly address *Jennings* in its brief. The Government instead seems to argue that the holding in *Jennings* does not apply here because the opinion notes that § 1252(b)(9) covers challenges to the "decision to detain [an alien] in the first place or to seek removal." (Doc. 19 at 14, quoting *Jennings*, 583 U.S. at 294-95.) This statement represents an overgenerous interpretation of dicta in *Jennings*. Moreover, Orozco does not challenge the Government's "decision to detain [him] in the first place or to seek removal." *Jennings*, 583 U.S. at 294-95. The Court remains similarly unpersuaded by the Government's citation of *Marvan v. Slaughter*, 2025 WL 1940043 (D. Mont. July 15, 2025), as *Marvan* involved different factual and legal circumstances and challenges. The petitioner in *Marvan* was not challenging his ongoing detention, requesting a bail hearing, drawing into question the constitutionality of the relevant statutory provisions at issue in this case, or making a due process claim. *Marvan* fails to support the Government's position in this case. Neither of the Government's cited provisions of § 1252 properly bar the Court's subject matter jurisdiction over this case.

## II.    Venue

The Government next argues that the Court lacks venue because Congress has restricted venue for challenges to "determinations under [§]1225(b)" to the United States District Court for the District of Columbia. (Doc. 19 at 15, citing 8

U.S.C. § 1252(e)(3)(A).) The Government argues that Orozco challenges the Government's decision that noncitizens like Orozco remain subject to mandatory detention under § 1225(b)(2) which is a "written policy directive" or "written policy guidance" under § 1225(b). (*Id*. at 14, citing 8 U.S.C. § 1252(e)(3)(A) (ii).)

The Ninth Circuit holds that the "immediate custodian" rule requires petitioners to sue their immediate custodian in the district where they are confined. *Doe v. Garland*, 109 F.4th 1188, 1198 (9th Cir. 2024). Orozco was confined in Great Falls, Montana, at the Cascade County Detention Center when he filed his petition. (Doc. 25 Ex. 1 at 2.) Courts within the District of Montana properly can exercise jurisdiction as it was the district of Orozco's confinement when he filed his petition. *See Doe*, 109 F.4th at 1198 (citing 28 U.S.C. § 2241 and § 2242).

The Court further adopts the reasoning provided by previous courts in rejecting the Government's arguments concerning systemic challenges and § 1252(e)'s alleged bar. *See e.g.*, *Ramirez v. Noem*, No. 2:25-CV-02136-RFB-MDC, 2026 WL 310090, at *11 (D. Nev. Feb. 5, 2026). The District of Nevada joined other courts in concluding that § 1252(e)(3)(A) fails to strip the court of venue. *Ramirez* first notes that the "threshold classification" of "which detention provision applies" to Orozco does not involve a determination under § 1225(b) or about its implementation. *Aguilar v. English*, No. 2:25-cv-898, 2025 WL 3280219, at *3 (N.D. Ind. Nov. 25, 2025). As a result, Orozco's challenge cannot be considered to

be a challenge on the validity of the system and instead is a challenge to his individual detention.

Secondly, § 1252(e) cannot apply to this case if § 1225(b) does not apply to Orozco. *Id*.; *see also*, *Guerrero Orellana v. Moniz*, 808 F.Supp.3d 167, 181 (D. Mass. 2025) ("Because § 1225(b)(2)(A) does not govern the detention of individuals in [the named plaintiff's] position in the first place, he is not seeking judicial review of the 'implementation' of § 1225(b)"; *see further Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (holding that the federal government defendants "cannot insulate themselves from judicial review" under § 1252 "simply by pointing to § 1225(b)(2)(A) and claiming that it applies without any factual support."); *see Ramirez*, 2026 WL 310090, at *12 (discussing in depth several additional reasons why § 1252(e)(3) does not strip district courts outside the District of Columbia of venue in these cases); *see also Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1097 (C.D. Cal. 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025) (same). The Court concludes that the District of Montana represents a proper venue in this case.

### III.    Statutory Classification

The Immigration and Nationality Act of 1952 ("INA"), codified in Chapter 12 of Title 8 of the United States Code, governs all aspects of immigration law. *See*

8 U.S.C. §§ 1101 *et seq.* Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996, which "substantially amended" portions of the INA's judicial review scheme with a "new (and significantly more restrictive) one." *Nken v. Holder*, 556 U.S. 418, 424 (2009). Along with its changes to the availability of judicial review, IIRIRA added § 1225 to the INA. Section 1225 outlines expedited removal of a certain class of noncitizens. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020); *See also Biden v. Texas*, 597 U.S. 785, 804 (2022). The predecessor to the current language of § 1226 existed in the original INA. *See* INA of 1952, Pub. L. No. 414 (66 Stat. 200) (current version at 8 U.S.C. § 1226). The IIRIRA also enacted the detention provisions at § 1226(a) and § 1225(b)(2). Congress recently amended portions of § 1226 through the passage of the Laken Riley Act. Pub. L. No. 119-1, January 29, 2025, 139 Stat. 3 (2025). The Laken Riley Act amended § 1226 by excluding from § 1226's "permissive detention scheme noncitizens who are inadmissible under § 1182(a)(6)(A), (6)(C), or (7), or are charged with certain [enumerated] crimes." *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, at *2 (6th Cir. May 11, 2026) (citing 8 U.S.C. § 1226(c)(1)(E)(i)-(ii); Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025)).

Sections 1225 and §1226 govern how the executive branch evaluates inadmissible noncitizens. The U.S. Supreme Court in *Jennings* has differentiated

these two sections, distinguishing their application by the category of noncitizens to which their provisions apply. *See* 583 U.S. at 289. *Jennings* held that the Government may "detain certain [noncitizens] seeking admission into the country" under § 1225(b) while § 1226 "authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings." *Id.* (emphasis added). The statutory language of § 1225 details the process by which immigration officers inspect noncitizens arriving in the United States, refer them for hearings, and initiate procedures for expedited removal. Section 1226 describes, by contrast, how noncitizens may be apprehended and detained. The fact that noncitizens detained under § 1226(a) are entitled to receive bond hearings at the outset of detention represents another distinction between these two sections. 8 C.F.R. §§ 236.1(d)(1); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (observing that § 1226(a) and its implementing regulations "provide extensive procedural protections that are unavailable under other detention provision").

The Government's original interpretation of the IIRIRA, and associated regulations, determined that people who entered the country without inspection were not considered detained under § 1225 and instead were considered detained under § 1226(a). This distinction rendered those persons detained under § 1226(a) eligible for a bond hearing. *See* Inspection and Expedited Removal of Aliens;

Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg.10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination"). The Government proceeded for an "unbroken 29-year streak" to provide bond hearings before an IJ for most people who fell into the category of those who were present but entered without inspection and who were not otherwise ineligible for bond. *Lopez-Campos*, 2026 WL 1283891, at *6. The Government's "almost three decades of practice 'is powerful evidence that interpretating [§ 1225(b)(2)(A)] in [this] way is natural and reasonable.'" *Lopez-Campos*, 2026 WL 1283891, at *6 (citing *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting)).

ICE and the DOJ issued a new policy on July 8, 2025, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See* ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX. This new policy states that all persons who entered the United States without inspection shall now be deemed subject to mandatory detention under § 1225(b)(2)(A). *Id*. The Bureau of Immigration Appeals ("BIA") issued a precedential decision, on September 5, 2025, in *Matter of Yajure Hurtado*, 29 I&N

14

Dec. 216 (BIA 2025), adopting ICE's and DOJ's new policy. Orozco challenges the application of this new policy to his case and argues that he properly should be classified under § 1226(a), rather than § 1225, as he is a person "already in the United States." (Doc. 1 at 16, quoting *Jennings*, 583 U.S. at 289.)

Many courts already have addressed challenges to ICE's new policy classifying people in Orozco's situation as falling under § 1225 rather than § 1226(a). *See e.g.*, *Maldonado Bautista*, 813 F. Supp. 3d. The Central District of California certified a nationwide class for these bond eligible people and extended declaratory judgment to the certified class. *Id*. The Ninth Circuit granted a partial stay of the various *Maldonado Bautista* orders on March 31, 2026, insofar as they extend beyond the Central District of California. *Maldonado Bautista v. U.S. Dep't of Homeland Security*, No. 26-1044 (9th Cir. Mar. 31, 2026). The underlying statutory arguments in *Maldonado Bautista* remain pending before the Ninth Circuit and the declaratory judgment remains in effect within the Central District of California.

The Court finds persuasive the analysis and conclusion contained both in *Maldonado Bautista* and in the many cases that have reached the same result. *See e.g.*, *Ramirez*, 2026 WL 310090, at *1 n.2 (noting a news article from January 1, 2026, that found that "more than 300 federal judges in over 1,600 cases across the country have rejected the government's new detention policy, with over 100 new

15

lawsuits filed daily, while 14 federal judges have found in favor of the government's position"); *see also Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 (S.D.N.Y. 2025) (discussing the statistics and stated that "the overwhelming, lopsided majority have held that the law still means what it always has meant."). The Second, Seventh, Eleventh, and recently, the Sixth Circuits, have all reached the same result that people already in the country, like Orozco, properly are subject to § 1226 rather than § 1225. *See Barbosa da Cunha v. Freden*, —— F.4th ——, 2026 WL 1146044 (2d Cir. 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, —— F.4th ——, 2026 WL 1223250 (7th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, —— F.4th ——, 2026 WL 1243395 (11th Cir. 2026); and *Lopez-Campos*, 2026 WL 1283891. The Court recognizes that many courts have concluded otherwise and reached the opposite result. *See e.g.*, *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). The Court remains unpersuaded by the legal analysis in those cases.

The Government's argument proves erroneous for several reasons. The Government first argues that the plain language of § 1225(b)(2)(A) makes it clear that the provision applies to Orozco. (Doc. 19 at 17.) The Government argues that Orozco is (1) an "applicant for admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." (*Id.*, quoting 8 U.S.C. §

1225(b)(2)(A).) Such an interpretation impermissibly ignores the INA's plain language.

Section 1225 states that "§ 1225(b)(2) applies to 'other [noncitizens]' who 'is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted.'" In other words, § 1225(b)(2) clearly creates a prerequisite that any "applicant for admission" first must have received a determination by an "examining immigration officer" regarding their admissibility. "When considering the statutory definitions of the INA and the plain text of § 1225, it is unambiguous that 'applicants for admission' do not include noncitizens already in the United States like [Orozco]—individuals that were not determined inadmissible by an 'examining immigration officer.'" *Maldonado Bautista*, 813 F.Supp.3d at 1104.

The Southern District of New York explained that the label of "seeking admission" cannot accurately apply to noncitizens, like Orozco, who already are present in the country. *See Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 495 (S.D.N.Y. 2025) (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025) ("For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there. Even if that

17

person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' (or 'seeking' 'lawful entry') at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.").

The Southern District of New York determined that the language of § 235(b)(2)(A) does not apply to someone like Orozco as "[a] noncitizen who already has entered the United States unlawfully and is living here cannot be said to be actively seeking lawful *entry* into the United States. The entry, whether lawful or unlawful, occurred years ago." *Barco Mercado*, 811 F. Supp. 3d at 496. The court further expounded "[a]nd such a noncitizen certainly is not seeking *entry after inspection and authorization by an immigration officer.* So the language of Section 235(b)(2)(A) does not apply to someone like [Orozco]." *Id.*

The Southern District of New York likewise found in *Lopez Benitez* that "the scope of the phrase 'seeking admission' in § 1225(b)" would "not reach someone who has been residing in this country for more than two years." 795 F. Supp. 3d at 491. Because the noncitizen in that case had "already [been] in the country . . . [the noncitizen could] be subject to detention only as a matter of discretion under § 1226(a)." *Id.* (citing *Jennings*, 583 U.S. at 289). The Sixth Circuit focused specifically on the meaning of "seeking" and concluded that "[n]oncitizens like [Orozco], who did not attempt lawful entry into the United States and are actively

18

avoiding being inspected for lawful entry, are not 'seeking admission' and are thus not subject to § 1225(b)(2)(A)'s mandatory detention scheme." *Lopez-Campos*, 2026 WL 1283891, at *4.

Congress's decision to employ two phrases with different words—"seeking admission" and "applicant for admission" clearly implies distinct meanings between the two. *See Lopez-Campos*, 2026 WL 1283891, at *4 (quoting *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 383 (6th Cir. 2026) (quoting *Tomaszczuk v. Whitaker*, 909 F.3d 159, 166 (6th Cir. 2018) ("[W]hen Congress deliberately uses different words, we presume those words to 'have different meanings.'"))). "[T]he canon against surplusage further supports the phrase's independent meaning. Under this canon, 'every word and every provision is to be given effect.'" *See Lopez-Campos*, 2026 WL 1283891, at *4 (quoting *Nielsen v. Preap*, 586 U.S. 392, 414 (2019) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012)). The Court cannot render superfluous one of the phrases without violating this canon.

The statutory structure of the INA and specifically, the heading under which § 1225(a)(1) falls, further support these conclusions. This subsection falls under § 1225, which addresses "[i]nspection by immigration officers; expedited removal of inadmissible arriving [noncitizens]; referral for hearing." 8 U.S.C. § 1225. Persons who are present in the United States and have not been inspected and authorized by

an immigration officers are merely part of the broadly defined term "[noncitizen]": any person not a citizen or national of the United States. 8 U.S.C. § 1101(a)(4). The heading clearly focuses on inspection at the border and arriving noncitizens, topics that prove inapplicable to people, like Orozco, who previously have arrived and are not subject to inspection at the border.

The Government's interpretation of the § 1225 would "effectively remove[] § 1226 from existence." *Maldonado Bautista*, 813 F.Supp.3d at 1105. "If the Court were to accept [the Government's] position that all noncitizens already in the country (regardless of whether they were inspected and authorized by an immigration officer) were 'applicants for admission,' then there would be no possible set of noncitizens to which § 1226(a) would apply." *Id*. The Court agrees with other courts in concluding that "[t]here must be an appreciable or meaningful distinction between § 1225 and § 1226." *Id*. Similarly, the Government's interpretation would render superfluous Congress's recent amendment to detention for people under § 1226(c) which violates the canon against surplusage. *Castanon-Nava*, 2026 WL 1223250, at *19.

The plain language of § 1226 also clearly demonstrates that Congress intended it to apply to noncitizens like Orozco. Specifically, § 1226(a) authorizes that "on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United

States." 8 U.S.C. § 1226(a). "Except as provided in subsection (c)," when a noncitizen is arrested under section 1226(a), the Attorney General may detain him or release him on bond or conditional parole. 8 U.S.C. § 1226(a)(1)-(2). This process includes the right to a bond hearing before an immigration judge. *See* 8 C.F.R. § 1236.1(d). At that hearing, the noncitizen may present evidence of their ties to the United States, lack of criminal history, and other factors that show they do not present a flight risk or danger to the community. *See generally In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (discussing *Guerra* factors). Section 1226(c) then "carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289 (emphasis in original). Orozco does not fall into any of these non-releasable categories.

Moreover, "[a] plain reading of this exception implies that the default discretionary bond procedures in section 1226(a) apply to noncitizens who, like [Orozco], are 'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but *have not been* implicated in any crimes as set forth in section 1226(c)." *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1323 (W.D. Wash. 2025) (citing § 1226(a) (Attorney General may release noncitizen on bond "except as provided in subsection (c)"). As the U.S. Supreme Court has recognized, "when Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that

absent those exceptions, the statute generally applies." *Rodriguez*, 802 F. Supp. 3d at 1323 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). "This lends strong textual support that 'inadmissible' noncitizens, including [Orozco] who are 'present in the United States without being admitted or paroled,' are included within section 1226." *Rodriguez*, 802 F. Supp. 3d at 1323 (citing *Shady* Grove, 559 U.S. at 400).

The Court finds that § 1226(a) provides the appropriate governing authority over Orozco's detention as the plain language of § 1225 and § 1226, the statutory structure of the INA, longstanding agency practice, congressional intent, and a significant and growing body of case law support his interpretation of the INA. The Court declines to credit the Government's position that Orozco is "seeking admission" to the United States, or is an "applicant for admission," and thus should be subject to mandatory detention under § 1225(b). The Court finds unpersuasive the authorities on which the Government relies. The Court instead finds that Orozco may be subject to detention only as a matter of discretion under § 1226(a) and that Orozco remains eligible for a bond hearing.

## IV.   Due Process

The Fifth Amendment's Due Process Clause prevents the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody,

detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It proves well established that such protection extends to noncitizens, including those persons involved in removal proceedings. *See id.* at 693. As noted by *Zadvydas*, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). *Id.*; *See also Reno v. Flores*, 507 U.S. 292, 306 (1993). "Even noncitizens have a liberty interest in continued freedom from civil immigration confinement." *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *2 (S.D.N.Y. June 18, 2025) (citing *Lopez v. Sessions*, No. 18 Civ. 4189, 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018) ("Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.")).

Noncitizen detainees charged with being in the U.S. illegally remain entitled to procedural due process, meaning "notice and opportunity to be heard appropriate to the nature of the case." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (internal quotation marks omitted); *see also A. A. R. P. v. Trump*, 605 U.S. 91 (2025). "'Procedural due process rules are meant to protect' against 'the mistaken or unjustified deprivation of life, liberty, or property.'" *A. A. R. P.*, 605 U.S. at 94 (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). Due process "is a flexible

concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Substantive due process protects individuals from government action that interferes with fundamental rights. *See Regino v. Staley*, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" *Id*. at 960 (citing Reno, 507 U.S. at 302). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Substantive due process thus protects noncitizens from arbitrary confinement by the government. Immigration detention represents civil detention, and civil detention violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id*. at 690 (internal quotations omitted) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). The Court already has determined that § 1226 applies to Orozco. It proves worth noting, however, that the Ninth Circuit previously has questioned the

24

constitutionality of prolonged detentions under § 1225(b). *See Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018).

Courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether detention violates procedural due process. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the *Mathews* test in a similar immigration detention context and holding that "[u]ltimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"). Courts weigh the following three factors under *Matthews*: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first *Mathews* factor considers the private interest affected by the Government's ongoing detention of Orozco without the opportunity for release on bond. *See Mathews*, 424 U.S. at 335. The private interest involves Orozco's interest in being free from imprisonment, "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. In this country, liberty remains the norm and detention "is

25

the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also Rodriguez Diaz*, 53 F.4th at 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted). Additionally, no final order of removal, or the availability of any existing process to challenge the Government's decision to detain Orozco without bond diminishes Orozco's liberty interests. *Cf. Rodriguez Diaz*, 53 F.4th at 1208 (holding that the habeas petitioner's liberty interest had been diminished by the fact that he was subject to a final order of removal, already had been afforded an individualized bond hearing, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances). The first *Mathews* factor weighs heavily in Orozco's favor.

Second, the Court considers "the risk of an erroneous deprivation of [Orozco's] interest through the procedures used, and the probable value, if any, of additional procedures." *Mathews*, 424 U.S. at 335. "The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain [people like Orozco] without any individualized showing of why this detention is warranted, nor any process for [those noncitizens] to challenge the exercise of that discretion." *Jacobo Ramirez v. Noem*, 817 F. Supp. 3d 1037, 1055 (D. Nev. 2025). Orozco faces no criminal charges and has no prior convictions. Orozco maintains deep financial, family, and

community ties in the country, and specifically in the small town of Froid, Montana. The Government has not asserted that Orozco presents a danger to the community or a flight risk. The combination of these factors demonstrates that the Government likely has been arbitrarily and unjustifiably depriving Orozco of his liberty. *See Jacobs Ramirez*, 817 F. Supp. 3d at 1055.

The additional procedures in this case simply would be a recognition of, and respect for, existing procedures available under § 1226(a), including an individualized custody redetermination by an immigration judge, in other words, a bond hearing. Application of these procedures may mitigate the risk of erroneous deprivation of Orozco's liberty. These procedures would require the Government to establish that Orozco presents a flight risk or danger to the community to continue his detention for the pendency of removal proceedings. These procedures attempt to enforce the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." *Zadvydas*, 533 U.S. at 691-92. The second *Mathews* factor still weighs heavily in favor of granting Orozco the procedural protections under § 1226(a).

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The

Court acknowledges that the Government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," represent "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. These interests would be served, in fact, by the individualized determination as to whether a person is dangerous or at risk of fleeing removal proceedings. In failing to articulate any individualized reason why detaining Orozco proves necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J. concurring).

The Government holds no interest in the unjustified deprivation of a person's liberty. Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government's and public's interest by *reducing* the fiscal and administrative burdens attendant to immigration detention. *See e.g.*, *Hernandez*, 872 F.3d at 996 (noting individual costs of immigration detention in 2017). In sum, the Court concludes that the *Mathews* factors weigh heavily in favor of Orozco. Orozco's detention without the opportunity for release on bond violates his procedural due process rights.

The Court additionally will address whether Orozco's detention violates substantive due process. Immigration detention violates substantive due process unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690. The Government has asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Orozco of his physical liberty. Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary confinement presents grave cause for concern. Accordingly, this Court further finds that the Government likely has detained Orozco in violation of both his substantive and procedural due process rights.

## V.    Remedy

Orozco asks the Court either to order the Government to release him immediately or promptly schedule and conduct a bond hearing. (Doc. 1 at 18.) Orozco argues that due process requires an impartial and neutral adjudicator. (*Id.* citing *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980)). The Court declines to weigh in on the alleged bias or lack of neutrality of immigration judges.

The Court instead recognizes the specific harm suffered by Orozco in the form of detention for nearly six months, no opportunity for a bond hearing and no

initial predetermination that detention proved necessary, and dismissal of criminal immigration charges. This specific harm should be remedied by ordering Orozco's immediate release, subject to appropriate bond conditions, and enjoining the Government from preventing his release on the basis that he is detained under § 1225(b)(2).

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" *Id*. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas*, 391 U.S. at 238. "Its mandate is broad with respect to the relief that may be granted." *Id*. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" *Id*. (quoting 28 U.S.C. § 2243).

Any post-deprivation review by an immigration judge would prove inadequate given the nature of the constitutional violation Orozco sustained here that involved the Government's failure to conduct any kind of individualized assessment *before* detaining Orozco. "The [Government] had ample opportunity to argue that [Orozco] is or would be subject to detention under § 1226, but [it] failed

30

to do so. Without any lawful basis for his detention at this time, the Court can only find that [Orozco] is entitled to immediate release." *Lara-Reyes v. Woodall*, No. 3:25-CV-1618-MMH-PDB, 2026 WL 733712, at *6 (M.D. Fla. Mar. 16, 2026). The Court is further concerned that an immigration judge may refuse to conduct a bond hearing based on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025).

The Court orders Orozco's immediate release. The record presented to the Court demonstrates that Orozco has deep ties to the community of Froid, Montana, through his role as a father and husband, the business that he operates, and the fact that he has lived in the United States for nearly two decades with no criminal record. The record further establishes that Orozco presents no flight risk or danger to the community. Orozco's continued detention violates his constitutional rights.

## ORDER

Accordingly, **IT IS ORDERED**:

- Orozco's Petition (Doc. 1) is **GRANTED.**

- The Court orders the Government to release Orozco from custody within 24 hours of this Order, under appropriate conditions of release, and to facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

31

- The Court orders the Government to certify compliance with this Order by filing on the docket.

**DATED** this 13th day of May, 2026.

Brian Morris, Chief District Judge
United States District Court